# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| PAUL L. SEEGOTT<br>P.O. Box 267<br>Chagrin Falls, Ohio 44022 | ) )<br>)<br>)<br>) | Case No. |
| | | Judge |
| P.J. LUCIER<br>2665 East Overlook Road<br>Cleveland Heights, Ohio 44106 | )<br>)<br>)<br>) | |
| JESSE DIRANDO<br>5690 Great Northern Blvd.<br>North Olmstead, Ohio 44070 | )<br>)<br>)<br>) | **COMPLAINT**<br>(Jury Demand Endorsed Herein) |
| STEVEN DERIN<br>611 Burgess Circle<br>Aurora, Ohio 44202 | )<br>)<br>)<br>) | |
| BRYAN WEBER<br>P.O. Box 473<br>Valley City, Ohio 44280 | )<br>)<br>)<br>) | |
| JOHN SOMPLE<br>P.O. Box 806<br>Bath, Ohio 44210 | )<br>)<br>)<br>) | |
| THAYNE ALRED<br>1785 Forest Drive<br>Medina, Ohio 44256 | )<br>)<br>)<br>) | |
| MICHAEL SHAUT<br>18800 South Woodland Road<br>Shaker Heights, Ohio 44122 | )<br>)<br>)<br>) | |
| RONALD POSNER<br>180 Blossom Lane<br>Orange Village, Ohio 44022 | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>)<br>) | |
| v. | ) | |





CYBERSTARTS, INC., nka  ✓        )
HARBOR PAYMENTS, INC.           )
c/o National Registered Agents, Inc.   )
3761 Venture Drive              )
Duluth, Georgia 30096           )
                                )
FIWARE HOLDINGS, INC.           )
c/o National Registered Agents, Inc.   )
3761 Venture Drive              )
Duluth, Georgia 30096           )
                                )
eDEBT, INC., fka                )
COLLECTIONS.COM, INC.,          )
c/o Alexander C. Smythe (Statutory Agent)  )
1900 Emery St., Suite 200       )
Atlanta, Georgia 30318          )
                                )
ASHISH BAHL        ✓            )
400 Galleria Parkway, Suite 700  )
Atlanta, Georgia 30339          )
                                )
ALEXANDER SMYTHE    ✓           )
400 Galleria Parkway, Suite 700  )
Atlanta, Georgia 30339          )
                                )
LEONARD WALKER     ✓            )
400 Galleria Parkway, Suite 700  )
Atlanta, Georgia 30339          )
                                )
MICHAEL ZOLDAN                  )
36 Munroe Falls Avenue          )
Munroe Falls, Ohio 44262        )
                                )
JOHN DOES 1-10                  )
                                )
        Defendants.             )
                                )

Plaintiffs, Paul Seegott, P.J. Lucier, Jesse Dirando, Steven Derin, Bryan Weber, John

Somple, Thayne Alred, Michael Shaut and Ronald Posner, for their Complaint against

Defendants Cyberstarts, Inc., nka Harbor Payments, Inc., FiWare, Inc., eDebt, Inc., fka

Collections.com, Inc., Ashish Bahl, Leonard Walkers, Alexander Smythe, Michael Zoldan and John Does (collectively referred to as "Defendants") state as follows:

## Parties

1.      Plaintiffs Paul Seegott, P.J. Lucier, Jesse Dirando, Steven Derin, Michael Shaut and Ronald Posner are residents of Cuyahoga County, Ohio.

2.      Plaintiffs Bryan Weber and Thayne Alfred are residents of Medina County, Ohio.

3.      Plaintiff John Somple is a resident of Summitt County, Ohio.

4.      Plaintiffs are all shareholders of eDebt, Inc., fka Collections.com, Inc. ("eDebt"), a Delaware corporation who used to have offices in Akron, Ohio and Atlanta, Georgia.[1]

5.      eDebt, Inc. was an internet company, whose business was selling distressed debt over the internet through its website.

6.      Defendant Cyberstarts, Inc., nka Harbor Payments, Inc. ("Cyberstarts"), is a Delaware corporation with it principal place of business in Atlanta, Georgia. On information and belief, Cyberstarts was initially a venture capital firm that was a major owner of shares in eDebt, Inc.

7.      Defendant FiWare, Inc. ("FiWare") is a Delaware corporation with its principal place of business in Atlanta, Georgia. FiWare, Inc. improperly purchased substantially all of the assets of eDebt without proper authority.

8.      Defendant Ashish Bahl was a member of the board of directors of eDebt and an officer of Cyberstarts at all relevant times herein. On information and belief, he is a resident of Georgia.

---

[1] Paul Seegott holds his stock in an IRA account: McDonald Investments, Inc. C/FBO Paul L. Seegott.

9. Defendant Alexander Smythe and Leonard Walker were also members of the board of directors of eDebt. Defendant Smythe was the chief executive office of eDebt at all relevant times herein. On information and belief, they are residents of Georgia.

10. Defendant Michael Zoldan was a member of the board of directors of eDebt at all relevant times herein. On information and belief, he is a resident of Ohio.

### Jurisdiction and Venue

11. Defendants are subject to personal jurisdiction with this Court in that they purposefully availed themselves of the privilege of conducting activities within the forum state with regard to their solicitation of investors and assets and numerous contacts and dealings in the State of Ohio.

12. Venue is proper in because some of the acts alleged herein took place or were committed within Cuyahoga County, Ohio.

### Background Facts

13. Plaintiffs were all stockholders of E-Debt Financial Services, Inc., ("EDFS"), a Delaware Corporation with its principal place of business in Akron, Ohio. EDFS was a start-up company that began its operations in or about January, 2000. EDFS purpose was to sell distressed debt over the internet through a website. Its primary assets were a website and proprietary software for selling distressed debt over the internet.

14. EDFS was founded by Zoldan and Morton Stone (Stone), a former Cleveland attorney, trying to capitalize on both the explosive growth in internet companies and debt collection. Zoldan was the chief executive officer of EDFS and was its largest shareholder. Zoldan and Stone, the second largest shareholder in EDFS, were the only members of the board of directors. Zoldan and Stone controlled every aspect of EDFS.

4

15.    On April 1, 2000, EDFS launched a web site that was intended to permit the internet-based trading of distressed debt.

16.    Although Zoldan often provided Plaintiffs with rosy letters updating of the success of EDFS, the company was spending cash at a rate far in excess of its revenues or projected revenues.

17.    By early 2001, Zoldan was looking for companies to team up with to continue this fledging start-up.  Several potential mergers were explored as well as the pursuit of additional capital either thru individual investors or venture capital firms.

18.    At some point in the fall of 2001, Zoldan began exploring a merger with Collections.com, Inc., a company with its principal place of business in Atlanta, Georgia.

19.    Collections.com, Inc. was in the same business as EDFS.  While EDFS had spent hundreds of thousands of dollars developing its own proprietary software to sell distress debt over the internet, it is unclear whether Collections.com, Inc. had any similar software developed or in the works.  Collections.com, Inc. was started by CyberStarts, a venture capital firm in Atlanta, Georgia, whose driving force was Defendant Ashish Bahl.  CyberStarts also backed and controlled a number of other companies in Atlanta, Georgia and they were all housed under one roof.

20.    During all relevant times herein, Cyberstarts was the largest shareholder of Collections.com, Inc. and later eDebt, Inc.

21.    In December, 2002, Zoldan, on behalf of EDFS, entered into a preliminary agreement to merge the two companies.

22.    In a letter dated January 11, 2002, Zoldan informed the shareholders EDFS of the proposed merger with Collections.com, Inc.  Zoldan recommended the merger and scheduled the

matter for a shareholder meeting to be held on January 31, 2002. Zoldan stated that after the plan merger, shareholders of EDFS would own 20% of the newly merged company.

23.    Based on the representations of Zoldan, the shareholders approved the merger of EDFS with Collections.com, Inc. at the January 31, 2002 shareholder meeting.

24.    After the shareholder meeting, the terms of the transaction materially changed to the detriment of EDFS and its shareholders. The transaction was now formulated as an asset purchase agreement with the shareholders of EDFS ending up with only 9% of the company instead of the originally contemplated 20%.

25.    On March 15, 2002, Zoldan entered into an asset purchase agreement with Collections.com, Inc. Under the agreement, EDFS transferred substantially all of its assets to Collections.com, Inc., including all proprietary rights to the software developed by EDFS from the funds contributed to the company by Plaintiffs, in return for 9% of the stock of Collections.com, Inc.

26.    Although Zoldan signed this asset purchase agreement of March 15, 2002, the shareholders of EDFS never approved of the transaction. The only shareholder vote prior to this agreement was one to merger the two companies under materially different terms. Zoldan and EDFS never approached the shareholders of EDFS for new authority to permit the asset purchase agreement.

27.    Subsequent to the signing of the asset purchase agreement, Zoldan sent a written shareholder action requesting a ratification of the asset purchase agreement with Collections.com, Inc.

28.    After the asset purchase agreement, Collections.com, Inc. changed its name to eDebt, Inc.

6

29. In return for the transferring substantially all assets of EDFS to Collections.com, Inc., the shareholders of EDFS received stock in Collections.com, Inc. after a 90-day waiting period.

30. Plaintiffs have all exchanged their shares of stock in EDFS for common stock in eDebt, Inc.

31. After less than a year of working with the combined company, Zoldan resigned or was fired as chief operating officer from eDebt in January, 2003. He remained a member of the board of directors.

32. Plaintiffs never received any information regarding the operations of eDebt directly from the company. Rather, information about eDebt was given to them by Zoldan on EDFS letterhead with rosy reports of the success of eDebt.

33. Zoldan told Lucier on February 4, 2003 that he was staying on the board of directors and that good things were happening with eDebt. He also told Lucier that he was exercising options to buy more stock of eDebt.

34. Shortly thereafter, the Defendants entered into a complex "Omnibus Agreement" without any shareholder meeting or approval by eDebt. The Omnibus Agreement provided for the following:

(a) eDebt transferred substantially all of its assets, including the proprietary software for the internet ability to sell debt to FiWare, an entity controlled by Cyberstarts, the largest shareholder of eDebt;

(b) In consideration for receiving these eDebt assets, FiWare and Cyberstarts forgave questionable debt allegedly owed by eDebt, such as office rent, even though all of Cyberstarts' entities were housed in one facility;

7

(c) Zoldan and Stone created a new Ohio corporation – DSP Holdings. FiWare provided DSP Holdings with a nonexclusive, worldwide royalty-free license to use eDebt's proprietary software. (eSale Platform);

(d) DSP agrees to assume the debt of eDebt exceeding $750,000 for this nonexclusive, worldwide royalty-free license;

(e) DSP also receives all of the stock held by Cyberstarts in the now empty shell of eDebt (1,218,404 of Series A Preferred Stock and 550,257 of Series B Preferred Stock); and

(f) All parties to the Omnibus Agreement provided each other full and complete releases from any potential liability.

35.     This sale of substantially all of the assets of eDebt to FiWare was not approved by the shareholders of eDebt. No shareholder meeting was called and no approval whatsoever was obtained from the shareholders. Moreover, no information was provided by eDebt and its board of directors to any of the Plaintiffs of this transaction.

36.     On information and belief, FiWare subsequently sold the eDebt assets to a third-party for an undisclosed sum of money.

37.     Defendants fraudulently concealed the sale to FiWare. To date, Plaintiffs have never received any funds or notice of the sale.

38.     Plaintiffs have never been informed of this transaction with FiWare by eDebt or its board of directors nor did they approve or even vote on the transaction with FiWare.

39.     As officers and/or directors and controlling persons, the individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to eDebt's financial condition and performance, growth, operations, financial statements, business

8

products, markets, management, revenues, earnings, cash positions and present and future business prospects, and to correct any previously issued statement that had become misleading or untrue.

40.    The individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

## COUNT I
### (Violation of State Law Requiring Shareholder Meeting and Vote)

41.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 40 above as if fully set forth herein.

42.    Defendants violated state law by failing to schedule a shareholder meeting and to obtain shareholder approval for the sale of substantially all assets of eDebt to FiWare without adequate compensation.

43.    State statutory law requires that a shareholder meeting be scheduled and a majority of shareholders approval of any sale of substantially all assets of company at a scheduled shareholder meeting.

44.    These breaches of state law committed by the Defendants for their own personal benefit have caused substantial harm to Plaintiffs in excess of $750,000 dollars, plus prejudgment interest and attorney fees.

## COUNT II
### (Breach of Fiduciary Duty)

45.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46.    Under state law, officers and directors of a corporation have a fiduciary duties and obligations to the corporation and its shareholders, including the duty to act with the highest

9

degrees of good faith, loyalty and in the best interest of the shareholders at all times.  They also have the duty to not act in their own self-interest at the expense of shareholders.

47.  The directors and officers also have a fiduciary duty to avoid taking actions that favor the interest of a majority stockholder at the expense of the company's minority stockholders.

48.  Cyberstarts, as eDebt's controlling stockholder, has a fiduciary duty to act in good faith and with due regard for the interest of eDebt's minority stockholders, and to avoid actions that further its own self-interest at the expense of those minority stockholders.  Consequently, the Defendants have a fiduciary duty to ensure that eDebt fulfills its fiduciary duty owed to eDebt's minority stockholders and to refrain from oppression of those minority stockholders.

49.  It is impermissible for the eDebt directors to take actions that are contrary to the best interests of eDebt minority shareholders in order to maintain Cyberstart's de facto control over eDebt, particularly when those actions have the purpose or effect of depriving the eDebt's stockholders of benefits.

50.  Defendant breach their fiduciary failing to conduct a shareholder meeting and duties by failing to obtain authority form eDebt's shareholders with regard to the above-described transaction with related parties.

51.  Defendants breached their fiduciary duty to the Plaintiffs by self-dealing and failing to obtain satisfactory compensation for the sale of the assets of eDebt.

52  Defendants breached their fiduciary duties to the Plaintiffs by failing to protect the interest of the Plaintiffs, minority shareholders.

10

53. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffs have been damaged in an amount exceeding $750,000.00, plus prejudgment interest and attorney fees.

## COUNT III
### (Fraud)

54. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above as if fully set forth herein.

55. At all relevant times herein, Defendants had a duty to Plaintiffs to fully inform them of the transactions of eDebt.

56. Defendants intentionally misrepresented and/or omitted material facts to Plaintiffs with regard to their investments in eDebt.

57. Defendants made these representations and/or omissions with the intent of inducing the Plaintiffs into relying on these false representations and/or omissions.

58 Plaintiffs justifiably relied on these representations and/or omissions.

59. As a result of the above, Defendants defrauded the Plaintiffs and caused substantial damages in an amount exceeding $750,000.00, plus prejudgment interest, punitive damages and attorney fees.

## COUNT IV
### (Civil Conspiracy)

60. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 61 above as if fully set forth herein.

62. On information and belief, the Defendants agreed and conspired to participate in an unlawful act, or a lawful act by unlawful means. Additionally, they committed several overt acts in furtherance of their scheme, all to the detriment of Plaintiffs.

11

63.  .. The individual defendants' conduct was deliberate and malicious, and engaged in for the purpose of maximizing the personal benefits of Defendants at the expense of Plaintiffs.  . .

64.  Plaintiffs have suffered economic damages from the individual Defendants' wrongful conduct in an amount exceeding $750,000.00, plus prejudgment interest, punitive damages and attorney fees.

## COUNT V
### (Aiding and Abetting)

65.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 above as if fully set forth herein.

66.  Defendants, Bahl, Smythe, Walker, Zoldan and others had a fiduciary duty to Plaintiffs, as minority shareholders of eDebt.

67.  Defendants breach that fiduciary duty by self-dealing, not obtaining adequate consideration for the sale of assets and failing to conduct a shareholder meeting and vote to approve any sale of assets.

68.  Defendants FiWare, CyberStarts, and Zoldan aided and abetting the Defendants' breach of fiduciary duty by knowingly participated in that breach of fiduciary duty.

69.  Because of Defendants aiding and abetting the breach of fiduciary duty, Plaintiffs have been damaged in an amount exceeding $750,000.00, plus prejudgment interest, punitive damages and attorney fees.

## COUNT VI
### (Negligent Misrepresentation)

70.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 71 above as if fully set forth herein.

72.   Defendants failed to exercise reasonable care or competence in obtaining and communicating false information or omitting to provide accurate information to Plaintiffs.

73.   Defendants knew, or should have known, that Plaintiffs would rely on their false representations and omissions.

74.   Plaintiffs justifiably relied on these representations and/or omissions.

75.   As a direct and proximate result of Defendants' negligent representations to Plaintiffs, Plaintiffs have sustained material financial loss in excess of $750,000, plus pre-judgment interest and attorney fees.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in an amount in excess of $750,000.00 together with interest (both pre-judgment and post-judgment), punitive damages, attorney fees, cost and any other relief deemed appropriate by this court.

Thomas A. Muzilla (OH 0037662)
**McCray, Muzilla, Smith & Meyers Co., LPA**
260 Burns Road, Suite 150
Elyria, Ohio 44035
Phone: (440) 366-9930
Fax: (440) 366-1910
Email: tmuzilla@mmsmlaw.com

**COUNSEL FOR PLAINTIFFS**

**JURY TRIAL DEMAND**

A trial by jury is hereby requested on each and every cause of action enumerated in this Complaint.

Thomas A. Muzilla

13