UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


PAUL L. SEEGOTT, *et al.*,           )        Case No.: 1:07 CV 1479
                                     )
          Plaintiffs                 )        JUDGE SOLOMON OLIVER, JR.
                                     )
          v.                         )
                                     )
CYBERSTARTS, INC., *et al.*,         )
                                     )
                                     )
          Defendants                 )        ORDER


          Pending before the court are: (1) Defendants Cyberstarts, Inc. n/k/a Harbor Payments, Inc.

("Cyberstarts"), Fiware Holdings, Inc. ("FiWare"), Ashish Bahl ("Bahl"), Smythe ("Smythe"), and

Walker's ("Walker") (collectively, "Defendants") Motion to Dismiss the Complaint for Lack of

Jurisdiction and Insufficiency of Service of Process (ECF No. 8);[1] (2) Defendants Smythe and

Walker's Motion to Dismiss the Complaint for Failure to Serve Process Timely (ECF No. 14); (3)

Defendants Smythe and Walker's Motion to Dismiss the Complaint for Failure to Serve Process

Timely and for Lack of Personal Jurisdiction (ECF No. 48); and (4) Defendants' Motion to Strike

---

[1]     Defendant eDebt, Inc. f/k/a Collections.com did not join in the Notice
of Removal. (Not. of Dismissal at ¶ 5, ECF No. 1.) It was declared a
void corporation by the State of Delaware, Division of Corporations,
on or about March 1, 2002, and it is no longer in existence.  (*Id.*)

Plaintiffs' Supplemental Authority. (ECF No. 36). For the following reasons, the court denies Defendants' Motions.

## I.  MOTIONS TO DISMISS THE COMPLAINT FOR INSUFFICIENCY OF PROCESS/FAILURE TO SERVE PROCESS TIMELY

### A. Facts Underlying These Motions

In Defendants' Motion to Dismiss the Complaint for Lack of Jurisdiction and Insufficiency of Service of Process (ECF No. 8) filed on May 29, 2007, Defendants argued that the court should dismiss Plaintiffs' Paul L. Seegott, *et al.*'s ("Plaintiffs") Complaint against Smythe and Walker for insufficiency of service of process because neither were served with a copy of the Summons or Complaint in this action.  (*Id.* at 14-15.)  In that same motion, Defendants argued that the court should dismiss the Complaint because "there is no valid basis for personal jurisdiction over the Defendants, [and therefore] the attempted out of state service of process was ineffective." (*Id.* at 15.) On July 23, 2007, Smythe and Walker filed their Motion to Dismiss the Complaint for Failure to Serve Process timely (ECF No. 14), alleging that "the 120 day time limit within which Plaintiff must have served [Smythe and Walker] expired on July 9, 2007," and Plaintiffs had not served Smythe and Walker to date.  (*Id.* at 2.)  On October 12, 2007, Smythe and Walker filed their Motion to Dismiss the Complaint for Failure to Serve Process Timely and for Lack of Personal Jurisdiction (ECF No. 48), wherein they contested the timeliness - but not sufficiency - of service of process. For the foregoing reasons, the court denies these Motions to Dismiss for insufficiency of service of process and/or timeliness.

This action was commenced in Ohio state court and subsequently removed to federal court on May 21, 2007.  Plaintiffs offer the following  timeline of service upon Smythe and Walker in the instant case:

1. March 9, 2007 – Complaint filed in Cuyahoga Common Pleas Court.

2. March 13, 2007 – In accordance with Ohio service rules, the Cuyahoga Clerk of Courts sent a summons and complaint to Defendants at a business address wherein Defendants Alexander Smythe and Leonard Walker were believed to be working with Defendant Ashish Bahl. The business address was 400 Galleria Parkway, Suite 700, Atlanta, Georgia 30339. At all times relevant in the complaint, these three defendants were directors and officers of the Defendant corporations.

3. March 26, 2007 – Denise Brooks receives the summons and complaint on behalf of Defendants Ashish Bahl, Alexander Smythe and Leonard Walker. Defendant Bahl does not object to this service.

4. May 21, 2007 – Complaint is removed to federal court. Under Fed. R. Civ. P. 4(m), the 120 day period commences upon the removal of the complaint. *See infra.*

5. May 29, 2007 – Defendants Smythe and Walker move to dismiss arguing that service was not timely made within 120 days under Fed. R. Civ. P. 4(m). Defendants submit declarations stating that they never received the Complaint. Defendants never state that the address used was not their business address or that Denise Brooks was not a business agent for them.

6. July 12, 2007 – Plaintiffs file a brief in opposition arguing that the 120 day period has not yet expired, even if you used the original service date of March 26, 2007.

7. July 23, 2007 – Defendants Smythe and Walker again file motion to dismiss stating
that the summons and complaint was not served within 120 days, pursuant to Fed. R. Civ. P. 4(m). No additional evidence was offered.

8. August 27, 2007 – Plaintiffs file a brief in opposition to Defendants' new motion to dismiss on service. Plaintiffs argue that the summons and complaint were received by Denise Brooks, who is believed to be their business agent. Defendants have offered no argument why the person accepting the summons and complaint and the address used was not reasonably calculated to effectuate service in accordance with Ohio law.

9. September 13, 2007 – Defendants Smythe and Walker file a reply brief in support of their motion to dismiss for lack of service. In support of their motion, these Defendants, for the first time, state that they do not keep a business address at 400 Galleria Parkway, Suite 700, Atlanta Georgia 30339, where Ashish Bahl does keep a business address. This is the first time that Plaintiffs are put on notice, for a potentially valid reason, that the summons and complaint served upon Defendants Smythe and Walker may be defective.

10. September 22, 2007 – Plaintiffs perfect service of the summons and complaint upon Defendant Smythe. A copy of the summons and complaint were served upon Defendant Smythe by certified mail, return receipt requested at his personal residence.

11. September 27, 2007 – Plaintiffs perfect service of the summons and complaint upon Defendant Walker. A copy of the summons and complaint were personally served upon Defendant Walker.

(Pls.' Br. in Opp'n to Dismiss Compl. Against Smythe and Walker at 2-3.)

Smythe and Walker largely agree with Plaintiffs' timeline, but they point out one crucial omission. Specifically, Smythe and Walker note that Plaintiffs admitted in their opposition brief on July 12, 2007 (ECF No. 13), that "with regard to Smythe and Walker, service was unsuccessful," before Plaintiffs stated that they still had time to perfect service under Rule 4. (*Id.* at 18, emphasis added). Yet in their opposition brief on August 27, 2007 (ECF No. 22), Plaintiffs essentially argued that service upon Smythe and Walker was successful. For example, Plaintiffs stated the Cuyahoga County Clerk of Courts mailed the Summons and Complaint to Smythe and Walker by certified mail, return receipt requested, on March 29, 2007. (*Id.* at 2-4) Plaintiffs state that the Summons and Complaint was received by Denise Brooks on March 29, 2007, "at the address believed to be the business address of Smythe and Walker." *Id.* Therefore, Plaintiffs maintain that service was appropriate under the Ohio Rules of Civil Procedure, and "Defendants offer no argument why the person accepting the summons and complaint and the address used was not reasonably calculated to effectuate service." (*Id.* at 2.) Plaintiffs argue "that Defendants are simply playing a game of cat and mouse, by not providing this Court with any details about the address used and Ms. Brooks." (*Id.* at 3-4.)

-4-

**B. Law and Analysis**

<u>1. Ohio Civil Rule 4.3(B)</u>

Since this action was commenced in state court, the court shall look to Ohio's Civil Rules to determine whether service attempted prior to removal was sufficient. Under Ohio Rule 4.3(B), service of process on an out-of-state defendant can be made by certified mail. However, "[s]ervice of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond." *Carter-Jones Lumber Co. v. Meyers*, No. 2005 CA 97, 2006 Ohio App. Lexis 5336, at *4 (Ohio Ct. App. Oct. 13, 2006); *see also Akron-Canton Regional Airport Authority v. Swinehart,* 406 N.E.2d 811, 814 (Ohio 1980) (holding that service was not "reasonably calculated" to apprise the defendant of the lawsuit because the defendant: (1) did not maintain an office on the premises of the business where he was attempted to be served; (2) his principal place of business was in another city; and, (3) affidavits demonstrated that the defendant only visited the business where service was attempted approximately two to three times per month.)

Here, like the defendant in *Swinehart* who did not maintain an office on the premises of the business where service was attempted, neither Smythe nor Walker has ever had a temporary or a permanent address at the business where Plaintiff attempted to serve them. (Smythe and Walker's Reply Mem. in Support of Mot. to Dismiss for Failure to Serve Process Timely at 4, Smythe Decl. ¶ 3, Walker Decl. ¶ 3.) Moreover, neither Smythe nor Walker has ever worked at any business located at the purported business address. (*Id.,* Smythe Decl. ¶ 4, Walker Decl. ¶ 4.) Therefore, in light of *Swinehart,* the service on Smythe and Walker on March 26, 2007, was not reasonably calculated to apprise Smythe and Walker of the lawsuit in accordance with Ohio Rule 4.3(B).

-5-

2. Federal Rule of Civil Procedure 4(m)

Smythe and Walker also argue (ECF No. 14, 48) that service on Smythe on September 22, 2007, and service on Walker on September 27, 2007, was untimely.  Timeliness of service is governed by Federal Rule of Federal Procedure 4(m).  Rule 4(m) states in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In *Eccles v. Nat'l Semiconductor Corp.,* 10 F. Supp. 2d 514, 519 (D. Md. 1998), the court explained that the clock for service under Rule 4(m) starts to run after the date of removal:

> Rule 4(m) governs cases originally filed in federal courts, and applies to removed cases after the date of removal.  Fed. R. Civ. P. 81(c); *Alber v. Illinois Dept. of Mental Health*, 786 F. Supp. 1340, 1376 (N.D. Ill. 1992), and cases therein cited. Accordingly, contrary to [the defendant's] argument, Rule 4(m)'s 120-day period for service begins to run on the date of removal. 14A Wright, et al., Federal Practice & Procedure § 1137 at 83 & n1.1 (Supp. 1998.)

Here, a notice of removal was filed on May 21, 2007, and service of process therefore should have been completed by September 18, 2007.  (ECF No. 1, Not. of Removal).  However, Smythe was not served in accordance with Rule 4(m) until September 22, 2007, and Walker was not served in accordance with Rule 4(m) until September 27, 2007.  Therefore, Smythe and Walker correctly argue that they were not timely served under Rule 4(m).

Since service was untimely pursuant to Rule 4(m), the court must now undertake a two-part analysis in light of *Henderson v. United States,* 517 U.S. 654, 662 n.10 (1996).  As noted in *Henderson*, the Supreme Court recognized that Rule 4(m) provides that if service is not completed within 120 days, the court must "dismiss the action without prejudice as to that defendant *or direct that service be effected within a specified time."* (Emphasis in original.)  The *Henderson* court stated

-6-

that: "the Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." *Id.* (emphasis added). Applying *Henderson,* the Sixth Circuit, in *Stewart v. TVA,* No. 99-5723, 2000 U.S. App. LEXIS 29904, at *2 (6th Cir. Nov. 21, 2000), stated that:

> Rule 4(m) requires the district court to undertake a two-part analysis. First, the court must determine whether the plaintiff has shown good cause for the failure to effect service. If he has, then "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time. *See id.* In other words, the court has discretion to permit late service even absent a showing of good cause. *See Henderson v. United States*, 517 U.S. 654, 662,(1996).

*See also Grose v. Mansfield Correction Institute,* No. 1:06 CV 2720, 2007 U.S. Dist. LEXIS 71014, at * 3 (N.D. Ohio Sept. 24, 2007); *Burnett v. Martin,* No. 6:06 -482, 2007 U.S. Dist. LEXIS 53939 (E.D. Ky. July 24, 2007); *Becker v. Wilkinson,* No. 2:05 CV 908, 2006 U.S. Dist LEXIS 95826, at *7-8 (S.D. Ohio Aug. 3, 2006); *Dixie Restaurants v. Philips Consumer Elecs. Co.,* No. 03-2506, 2005 U.S. Dist. LEXIS 44078, at *4-6 (W.D. Tenn. Feb. 18, 2005); *Osborne v. First Union Nat'l Bank of Delaware,* 217 F.R.D. 405, 407 (S.D. Ohio 2003) (citing *Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3d Cir. 1995); *Davies v. Richards,* 172 F.3d 44 (4th Cir. 1999); *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir. 1996); *Panaras v. Liquid Carbonic Industries Corp.,* 94 F.3d 338, 340-341 (7th Cir. 1996); *Adams v. Allied Signal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir. 1996); *DeTie v. Orange County,* 152 F.3d 1109, 1111 n.5 (9th Cir. 1998); *Espinoza v. United States,* 52 F.3d 838, 840-841 (10th Cir. 1995); *In re Lopez,* 292 B.R. 570, 575-76 (E.D. Mich. 2003)).

This court does not find that the Sixth Circuit decision in *Nafziger v. McDermott Int'l,* 467 F.3d 514, 521 (6th Cir. 2006), upholding a district court judge's dismissal of a case for untimely

service, to be contrary to the cases cited above.  Specifically, the Sixth Circuit in *Nafziger,* 467 F.3d at 521, was called upon to address "whether the plaintiffs show good cause for their failure, and, more specifically, whether the district court abused its discretion in concluding that they had not." *Id.*  There is no indication that the district court judge in *Nafzige*r was called upon to exercise or considered exercising its discretion to extend the Rule 4(m) deadline in the absence of good cause, or that the Court of Appeals' opinion addressed this issue in any way.

### a. Good Cause

The Sixth Circuit has repeatedly recognized that the court may excuse untimely service if the plaintiff demonstrates "good cause," which requires the plaintiff to show extraordinary circumstances existed. *See e.g., Habib*, 15 F.3d at 73 (finding "good cause" where a seriously ill, *pro se* plaintiff made a good faith yet ultimately flawed effort to perfect service).  Here, Plaintiffs' implicit contention that good cause exists to excuse their failure to comply with Rule 4(m), because the first time they were put on notice  regarding the reason that the Summons and Complaint was defective was September 17, 2007, is belied by the fact that Plaintiff admitted in July, 2007, that service upon Smythe and Walker was improper.  Therefore, unlike the *pro se* plaintiff in *Habib,* Plaintiffs in the instant case fail to demonstrate the extraordinary circumstances that constitute good cause under Rule 4(m).

### b. Court's Discretion

Yet even if a plaintiff cannot show good cause, the court has discretion to permit late service under Rule 4(m), as discussed above.  *See Henderson*, 517 U.S. at 662; *Osborne*, 217 F.R.D. at 408.  Therefore, the choices now available to the court under Rule 4(m) are to dismiss the Complaint against Smythe and Walker without prejudice, or to extend the time for service of process to allow

for the extra nine days it took Plaintiffs to serve Smythe and the extra fourteen days it took Plaintiffs to serve Walker. As the court stated in *Dixie Restaurants v. Philips Consumer Electronics Company,* No. 03-2506, 2005 U.S. Dist. LEXIS 44078, at *6-7 (W. D. Tenn. 2005), a case factually similar to the instant case, "it would be nonsensical to dismiss the action without prejudice so that Plaintiff could bring the action again with timely service." As a result, the *Dixie Restaurants* court held that, "as actual service has been effected, the court exercises its discretion and extends the time allowable for service, thus finding that service was timely under the requirements of Rule 4(m)." *Id.*

Like the court in *Dixie Restaurants*, this court finds it would be nonsensical to dismiss the case without prejudice against Smythe and Walker so that Plaintiffs can bring the action against them again with timely service. Since service has been effected, the court, like the court in *Dixie Restaurants,* extends the time allowable for service, thus finding that service upon Smythe and Walker was timely under the requirements of Rule 4(m). Additionally, the court finds this action is appropriate in light of the fact that: (1) as evidenced by their motions to dismiss on this ground, Smythe and Walker had actual notice of the lawsuit and therefore did not suffer unfair surprise; (2) a significant time extension is not required; and (3) the minimal time extension serves the overall policy in this circuit of resolving disputes on their merits rather than procedural or technical grounds *See, e.g., Burnett v. Martin,* No. 6:06-482, 2007 U.S. Dist. LEXIS 53939, at *6 (E.D. Ky. July 24, 2007) (citing *Vergis v. Grand Victoria Casino & Resort,* 199 F.R.D. 216, 218 (S.D. Ohio 2000); *Stafford v. Franklin Cty.,* Case. No. 2:04 cv 178, 2005 U.S. Dist. LEXIS 12740, at *9-10 (S.D. Ohio June 28, 2005) (citing *Nehls v. Hillsdale College,* No. 1:03 CV 140, 2004 U.S. Dist. LEXIS 8588, at *15 (W.D. Mich. Feb. 20, 2004). Accordingly, the court denies Smythe and Walker's Motions to Dismiss for failure to serve process timely. (ECF No. 14, 48.)

### 3. Sufficiency of Process in Light of Personal Jurisdiction

Moreover, since the court finds, for the reasons stated below in Section II, that the court has personal jurisdiction over all Defendants, Defendants' argument that the attempted out-of-state service was ineffective because there is no valid basis for personal jurisdiction over the Defendants is not well-taken. Therefore, the court denies Defendants' Motion to Dismiss the Complaint for Lack of Jurisdiction and Insufficiency of Process. (ECF No. 8).

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF Nos. 8, 48.)  For the following reasons, the court denies Defendants' Motion to Dismiss on this ground.

### A. Facts and Procedural History

Plaintiffs were all minority stockholders of E-Debt Financial Services, Inc., ("EDFS"), a Delaware Corporation with its principal place of business in Akron, Ohio.  (Compl. ¶¶ 13, 52, ECF No. 1, Ex. 3.)  EDFS sold distressed debt over the Internet via a website.  (*Id*. ¶ 13.)  EDFS's primary assets were its website and software for selling distressed debt over the Internet.  (*Id*. ¶ 13.)

EDFS was founded by Michael Zoldan ("Zoldan") and Morton Stone ("Stone").  (*Id*. ¶ 14.) Zoldan and Stone were the only members of EDFS's Board of Directors and controlled every aspect of EDFS.  (*Id*. ¶ 14.)  In order to offset EDFS's financial difficulties, Zoldan entered into a preliminary agreement in 2002 to merge EDFS with Collections.com.  (*Id*. ¶ 21.)  Collections.com was started by Cyberstarts, a venture capital firm whose driving force was Defendant Bahl.  (*Id.* ¶ 19.)  In a letter dated January 11, 2002, Zoldan informed EDFS's shareholders of the proposed merger with Collections.com and scheduled the matter for a shareholder meeting to be held on

-10-

January 31, 2002.  (*Id.* ¶ 22.)  Based on Zoldan's representations to them that they would own twenty percent of the newly merged company, EDFS's shareholders approved the merger with Collections.com at the January 31, 2002, shareholder meeting.  (*Id.* ¶¶ 22, 23.)  After the shareholder meeting, the transaction was transformed from a merger into an asset purchase agreement, under which EDFS's shareholders would be given only nine percent of the newly merged company in exchange for all of EDFS's assets, including the proprietary rights to its software.  (*Id.* ¶¶ 24, 25.)

On March 15, 2002, Plaintiffs allege that, without seeking or obtaining their approval for the new terms, Zoldan signed the asset purchase agreement with Collections.com.  (*Id.* ¶ 25, 26.)  Only after executing the agreement did Zoldan send a written shareholder action to Plaintiffs requesting a ratification of the asset purchase agreement.  (*Id.* ¶ 27.)  After the transaction, Collections.com changed its name to eDebt, Inc. and Plaintiffs received stock in Collections.com. (*Id.* ¶¶ 28, 29.)  Plaintiffs subsequently exchanged their shares in EDFS for common stock in eDebt.  (*Id.* ¶ 30.)  Defendants Zoldan, Smythe, Walker, and Bahl each held important positions within eDebt.  (*Id.* ¶¶ 9, 31.)  Bahl was the Chief Executive Officer of FiWare and an officer and member of eDebt's board of directors. (Bahl Decl. ¶¶ 5-6.) Smythe held various officer positions within eDebt and was a member of eDebt's board of directors.  (*Id.* ¶ 9; Smythe Decl. ¶¶ 3.)  Walker was the Chief Executive Officer of eDebt and  a member of eDebt's board of directors.  (Walker Decl. ¶ 3.)  Zoldan was the Chief Operating Officer of eDebt.  (Compl. ¶ 9.)

In January of 2003,  Zoldan resigned or was terminated as Chief Operating Officer of eDebt, but he retained his seat on the board of directors.  (*Id.* ¶ 31.)  Shortly thereafter, Plaintiffs allege that Defendants entered into an agreement ("Omnibus Agreement"), without scheduling a meeting of eDebt's shareholders, notifying eDebt's shareholders, or obtaining eDebt's shareholders' approval,

to transfer all of the assets of eDebt, including the proprietary software, to FiWare, a business controlled by Cyberstarts, the largest shareholder of eDebt.  (*Id.* ¶¶ 34, 35, 38.)  Plaintiffs received no funds from the sale.  (*Id.* ¶ 37.)

In exchange for eDebt's assets, Plaintiffs claim that FiWare and Cyberstarts forgave questionable debt owed by eDebt, such as office rent, even though all of Cyberstarts' entities were housed in one facility.  (*Id.* ¶ 34.)  Moreover, as part of the Omnibus Agreement, Plaintiffs allege that Defendants transferred all of the stock held by Cyberstarts into the now-empty shell of eDebt.  (*Id.*) Zoldan and Stone created a new Ohio corporation, DSP Holdings ("DSP").  FiWare provided DSP with a world-wide, non-exclusive royalty-free license to use eDebt's proprietary software. In exchange for the license and the stock, Plaintiffs claim that DSP agreed to assume eDebt's debts exceeding $750,000.  (*Id.*)  Furthermore, Plaintiffs claim that FiWare later sold eDebt's assets to a third party for an undisclosed sum of money.  (*Id.* ¶ 36.)

On March 9, 2007, Plaintiffs commenced an action in the Cuyahoga County Court of Common Pleas against Defendants alleging claims of fraud, state law violation, civil conspiracy, aiding and abetting, negligent misrepresentation, and breach of fiduciary duty.  (*Id.* ¶ 41-75.)  On May 10, 2007, Plaintiffs voluntarily dismissed Defendant Michael Zoldan without prejudice. (Voluntary Dismissal, ECF No. 1-2.)  On May 21, 2007, with the exception of Defendant eDebt, which was declared void by the State of Delaware, Defendants Bahl, Cyberstarts, FiWare, Smythe and Walker filed a joint Notice to Remove the case to this court.  (Not. of Removal, ECF No. 1.)

**B. Law and Analysis**

In a diversity case, a federal court may exercise personal jurisdiction over an out-of-state defendant only if the following two requirements are satisfied: (1) the law of the state in which the

-12-

district court sits authorizes jurisdiction; and,(2) the exercise of jurisdiction comports with the Due Process Clause. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006) (citing *Compuserve v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

For jurisdiction to comply with the requirements of Due Process, the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). A defendant's contacts with the forum state can give rise to two types of jurisdiction: specific and general. If the cause of action arises from or is related to the defendant's contacts with the forum state, the court may have specific jurisdiction over the defendant, even when the defendant's contacts with the state are limited. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Brunner*, 441 F.3d at 463. If the cause of action does not arise from or is not related to the defendant's contacts with the state, the court may exercise general jurisdiction over the defendant only if the defendant's contacts with the state are "continuous and systematic," such that the court's exercise of jurisdiction would be fair as to any claim. *Kerry Steel v. Paragon Industries*, 106 F.3d 147, 149 (6th Cir. 1997); *Brunner*, 441 F.3d at 463; *Helicoptoros*, 466 U.S. at 408. In the instant case, the court finds for the reasons stated below that the court has specific jurisdiction over Defendants. Therefore, the court need not and does not address whether it has general jurisdiction over Defendants.

The court is ruling on Plaintiffs' Rule 12(b)(2) motion without conducting an evidentiary hearing. Therefore, the court must consider the pleadings and affidavits in a light most favorable to Plaintiffs. *CompuServe,* 89 F.3d at 1262. Plaintiffs need only make a prima facie showing of jurisdiction to defeat the motion. *Id.* Accordingly, "dismissal in this procedural posture is proper

-13-

only if all the specific facts which the plaintiff[s] allege[] collectively fail to state a prima facie case for jurisdiction." *Id.*

1. Ohio's Long-Arm Statute

In Ohio, the first prong of the specific jurisdiction inquiry is satisfied if the defendant's conduct falls within the requirements of Ohio's long-arm statute, Ohio Rev. Code § 2307.382. Plaintiffs assert that Defendants are subject to personal jurisdiction under §§ (A)(1) and (A)(6) of Ohio's long-arm statute, which authorizes jurisdiction:

> (A) ... over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) transacting any business in this state; ... and
>
> (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

For the following reasons, the court finds that Defendants' conduct falls within the requirements of §§ (A)(1) and (A)(6) Ohio's long-arm statute.

*a. "Transacting Business" Prong of the Long-Arm Statute*

This court has recognized that § (A)(1) means "to carry on any business" and "to have dealings," and is "broader than the word contract." *Highway Auto Sales v. Auto-Konig of Scottsdale,* 943 F. Supp. 825, 829 (N.D. Ohio 1996) (citing *Goldstein v. Christiansen,* 638 N.E.2d 541, 544 (Ohio 1991)). The Ohio Supreme Court has held that "personal jurisdiction does not require presence in the forum state." *Goldstein v. Christiansen,* 638 N.E.2d 541, 544 (Ohio 1994).

Plaintiffs allege that Defendants have been transacting business in Ohio since 2002 when they began negotiations for the purchase of the assets of EDFS, a corporation that was located in Akron, Ohio. (Pl.'s Opp'n to Mot. to Dismiss at 12.) Plaintiffs claim that, subsequent to the purchase of

-14-

EDFS, Defendants carried on a business in Ohio by managing and supervising eDebt, which had employees and an office in Ohio. (*Id.*) Plaintiffs assert that:

> To say that these Defendants did not have sufficient contacts with the State of Ohio is to ignore the facts that the Defendants sought out a business in Ohio, operated that business and then devised a scheme whereby they could take the assets of that business for their own personal gain at the expense of these nine Plaintiffs who were shareholders and investors in the business.

(*Id.*)

Defendants Cyberstarts and Fiware transacted business in Ohio because they were parties to the Omnibus Agreement, which included agreements with DSP, an Ohio corporation. Specifically, FiWare can be held to have "transacted business" in Ohio because, pursuant to the Omnibus Agreement, it acquired substantially all of the assets of eDebt, which maintained operations in Ohio until 2003. Additionally, FiWare agreed to provide DSP, an Ohio corporation, with a license for eDebt's software. Cyberstarts can be held to have "transacted business" in Ohio because, pursuant to the Omnibus Agreement, it agreed to forgive debt owed by eDebt, which had an office in Ohio, and agreed to transfer the stock held by it in the empty shell of eDebt to DSP, an Ohio corporation.

Defendants argue, citing *Diebold v. Firstcard Financial Services, Inc.,* 104 F. Supp. 2d 758, 761 (N.D. Ohio 2001), that "corporate officers are generally not subject to personal jurisdiction due to the 'fiduciary shield' doctrine." The court finds that Defendants' argument that the court lacks personal jurisdiction over Smythe, Walker, and Bahl based upon the application of the fiduciary shield doctrine is not well-taken. Citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981), *Diebold* states that "the doctrine holds that 'if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Id.* However, *Diebold*

-15-

stated that the application of the doctrine is subject to two exceptions: (1) a non-resident defendant personally involves himself in transactions which give rise to the cause of action; and, (2) the non-resident defendant was physically present in the state. *Id.* The *Diebold* court held that, utilizing this criteria, personal jurisdiction could not be established over the defendant under the Ohio long-arm statute. The court therefore did not address whether exercising personal jurisdiction would be appropriate under a Due Process analysis.

Here, both of the *Diebold* exceptions are applicable in the instant case. Smythe and Walker were physically present in the state when they traveled to Ohio to conduct business in their respective roles as officers of eDebt. Moreover, Bahl was integrally involved in the affairs of the corporations that are Defendants in this case. He was the driving force behind Cyberstarts, and Cyberstarts, in turn, was the largest shareholder of eDebt and controlled FiWare (Compl. ¶ 19.) Bahl was also a member of the board of directors of eDebt. Therefore, Bahl exercised more control over the entities named in the Omnibus Agreement than any of the other Defendants. Furthermore, Bahl was integrally involved in the negotiation and execution of the Omnibus Agreement. (Pls.' Br. in Opp'n to Defs.' Mot. Dismiss at 5.) Therefore, the fiduciary shield doctrine is not applicable to Smythe, Walker, and Bahl. Accordingly, Plaintiffs satisfy the first prong of specific jurisdiction because the Defendants' conduct falls within § (A)(1) of Ohio's long-arm statute.

### b. "Tortious injury" Prong of Ohio's Long-Arm Statute

Plaintiffs allege that Defendants' conduct also satisfies the first prong of specific jurisdiction because it falls within § (A)(6) of Ohio's long-arm statute. Generally, § (A)(6) "[confers] personal jurisdiction when a claim in question [is] related to property located in Ohio or the tortious injury [is] suffered in Ohio." *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 U.S. Dist. Lexis 42941, at

*23 (S.D. Ohio June 13, 2007).  For instance, in *Highway Auto Sales v. Auto-Konig of Scottsdale,* 943 F. Supp. 825, 829 (N.D. Ohio 1996), the court found that the out-of-state defendant's alleged tortious conduct of acts of negligent misrepresentation and fraud "fit squarely within Ohio's long-arm statute" because the actions caused injury in Ohio.  *See also Herbruck v. LaJolla Capital,* C.A. No. 19586, 2000 Ohio App. LEXIS 4668, at *8 (Summit Cty., Sept. 27, 2000) (holding that an officer of a corporation was subject to personal jurisdiction under Section 2307.382(A)(6) because he worked with others, *albeit* outside of Ohio, to eliminate an Ohio resident's interest in an Ohio company).

> The Ohio Court of Appeals has recognized that:
>
> [M]ajority shareholders have a fiduciary duty to minority shareholders.  Because of the potential for abuse, the fiduciary duty is 'heightened' when the corporation is a close corporation. This heightened fiduciary duty is breached when control of the close corporation is utilized to prevent the minority from having an equal opportunity in the corporation.

*Koos v. Cent. Ohio Cellular, Inc.*, 641 N.E.2d 265, 271 (Ohio Ct. App. 1994).  The court finds in the instant case for the claim herein for breaching its fiduciary duty to the minority shareholders of eDebt. The Ohio Supreme Court has held that, "control of the stock in a close corporation cannot be used to give the majority benefits which are not shared by the minority." *Crosby v. Beam*, 548 N.E.2d 217, 221 (Ohio 1989).  Here, Cyberstarts was the majority shareholder of eDebt.  Therefore, Cyberstarts owed Plaintiffs, eDebt's minority shareholders, an equal opportunity to participate in the approval of the Omnibus Agreement and an opportunity to ensure that their interests were represented in the Omnibus Agreement.  As Cyberstarts allegedly neglected to do so, it breached its fiduciary duty to Plaintiffs, who are Ohio residents, and caused them harm. As discussed above, had Plaintiffs been notified about the transaction, eDebt's assets may not have been sold.  FiWare also allegedly set out

-17-

to cause tortious injury to Plaintiffs, minority shareholders of eDebt and Ohio residents, by purchasing the assets of eDebt without ensuring that it had proper authority from eDebt's shareholders to do so.

Again, the fiduciary shield doctrine is inapplicable because the *Diebold* exceptions are applicable.  First, Smythe and Walker were present in Ohio.  Secondly, Smythe, Walker, and Bahl were personally involved in the alleged tortious conduct.  For example, Plaintiffs argue that Smythe, Walker, and Bahl breached their fiduciary duty to Plaintiffs in approving the transfer of eDebt's assets without notifying Plaintiffs or seeking their approval before finalizing the transaction.  Thus, like the defendants in *Herbruck*, Smythe and Walker allegedly worked with others outside of Ohio, to cause harm to Plaintiffs, former shareholders of eDebt who are Ohio residents.  As directors of eDebt, Smythe, Walker, and Bahl had an affirmative duty to notify Plaintiffs of the sale of eDebt's assets and they also had an affirmative duty to arrange a shareholder meeting to facilitate Plaintiffs' approval of the transaction.  Had Plaintiffs been given an opportunity to vote on the Omnibus Agreement, the deal to sell eDebt's assets may not have been consummated.  Accordingly, Plaintiffs satisfy the first prong of specific jurisdiction because Defendants' conduct falls within § (A)(6) of Ohio's long-arm statute.

## 2. Due Process under the Fourteenth Amendment

Plaintiffs argue that they can fulfill the second prong of specific jurisdiction because the court's exercise of jurisdiction in the instant case complies with Due Process.  The Sixth Circuit applies a three-part test to determine whether specific jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6ᵗʰ Cir. 1992) (citing *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6ᵗʰ Cir. 1968)) (emphasis added).

With regard to the application of the fiduciary shield doctrine to a Due Process analysis, the Sixth Circuit in *Balance Dynamics Corp. v. Schmitt Industries, Inc.,* 204 F.3d 683, 698 (6th Cir. 2000) held that:

> While it is true that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants.  Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice, *i.e.,* whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Id.* (citation omitted).

### a. Purposeful Availment of Ohio's Privileges

To satisfy the purposeful availment prong of Due Process, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In *Tharo Sys., Inc. v. cab Produkttechnick Gmbh & Co. KG*, 196 Fed App'x 366, 370 (6th Cir. 2006) (quotations omitted), the Sixth Circuit explained:

> Though the mere existence of a contract is insufficient to confer personal jurisdiction, when a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.

*Id.*  Moreover, "with respect to interstate contractual obligations parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.*  (citations

-19-

omitted). The existence of intentional tortious conduct enhances a party's other contacts with the forum state for purposes of a purposeful availment analysis. *Air Prods. & Controls v. Safetech, Int'l, Inc.,* 503 F.3d 544, 553 (6th Cir. 2007).

Applying these principles, Cyberstarts and FiWare purposefully availed themselves of the privilege of acting in Ohio by negotiating and executing the Omnibus Agreement.  Under the Omnibus Agreement, a new Ohio corporation, DSP, was created.  DSP agreed to assume eDebt's debt for FiWare's grant of a nonexclusive, worldwide royalty-free license.  Moreover, Defendants' alleged conduct in connection with the negotiation and execution of the contract was intentionally tortious, thus enhancing their contacts with Ohio.

The application of the fiduciary shield doctrine is also inappropriate here because Smythe, Walker, and Bahl purposefully availed themselves of Ohio's privileges through their active and personal involvement in the conduct giving rise to the claim.  Specifically, Smythe and Walker purposefully availed themselves of the privileges of Ohio because they came to Ohio to purchase assets, operated eDebt for over 12 months in Ohio, negotiated and entered into the Omnibus Agreement with Ohio residents, and had a continuing fiduciary obligation to the Ohio residents with whom they negotiated the Omnibus Agreement.  Moreover, as directors of eDebt, Smythe and Walker had a fiduciary obligation to the Ohio residents with whom the Omnibus Agreement was negotiated. Bahl purposefully availed himself of the privilege of acting in Ohio by negotiating and formalizing the Omnibus Agreement on behalf of the entities that he controlled with an Ohio resident, Zoldan, and with an Ohio corporation, DSP.  Accordingly, Plaintiffs satisfy the first prong of the three-part Due Process test.

*b. Cause of Action Arising From Activity in Ohio*

-20-

To fulfill the "arising from" prong of the three-part Due Process test, Plaintiffs must show that the causes of action arise from Defendants' activities in Ohio. *See Southern Machine*, 401 F.2d at 374. This "lenient standard" asks whether the causes of action were "made possible by" or "lie in the wake of" the defendants' contacts, or whether the causes of action are "related to" or "connected with" the forum state. *Air Prods.,* 503 F.3d at 553. The cause of action need not "formally" arise from defendants' contacts. *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

As the Court has already held, Defendants purposefully availed themselves of the privileges of Ohio by entering into the Omnibus Agreement with an Ohio resident. Since the causes of action are based upon the Defendants' allegedly  tortious misconduct regarding the negotiation and execution of the Omnibus Agreement, the action arises from Defendants' activities in Ohio. *See, e.g., In-Flight Devices Corp.* v. *Van Dusen Air*, 466 F.2d at 220, 232 (6th Cir. 1972) (tort action for damage to business reputation made possible by defendant contracting with plaintiff satisfies *Southern Machine's* "arising from" requirement).  Again, the application of the fiduciary shield doctrine is inappropriate with respect to Bahl, Smythe, and Walker because, as discussed above, they were actively and personally involved in the conduct of Cyberstarts, FiWare, and eDebt. Accordingly, Plaintiffs satisfy the second prong of the three-part Due Process test.

### c. Reasonableness of Jurisdiction

Where, as in the instant case, Plaintiffs have satisfied the first two prongs of the Due Process inquiry, the court will "presume the specific assertion of personal jurisdiction was proper." *Cole*, 133 F.3d at 436.  Furthermore, the court finds that the weighing of the following four factors support the conclusion that the exercise of jurisdiction over all Defendants is reasonable: (1) the burden on the defendants; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4)

-21-

the interest of other states in securing the most efficient resolution of controversies. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996).

First, FiWare and eDebt agreed to the jurisdiction of Ohio's courts in the Omnibus Agreement, so they had knowledge of possibility of defending actions in Ohio.  Therefore, the adjudication of this matter in Ohio should not be a burden to them, as they should be prepared to defend actions in this state.  Admittedly, the other Defendants will face some burden in having to stand trial in an out-of-state forum; however, this burden is minimal in comparison to requiring the nine Plaintiffs to stand trial out-of-state despite the fact that Ohio courts have personal jurisdiction over Defendants.  Second, Ohio has a strong interest in ensuring that disputes such as this one, involving Ohio residents and Ohio corporations, are resolved here.  Third, Plaintiffs share Ohio's interest in obtaining relief here. Fourth, exercising jurisdiction will result in the most efficient and coherent resolution of the dispute by ensuring that inconsistent rulings are not held on the same matters in parallel proceedings in different forums.  Therefore, the court finds that Plaintiffs have demonstrated that the exercise of personal jurisdiction over Defendants is reasonable.  Accordingly, the court denies Defendants' Motions to Dismiss for lack of personal jurisdiction. (ECF No. 8, 48.)

### III. DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SUPPLEMENTAL AUTHORITY

Plaintiffs filed a Supplemental Authority in Support of Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, wherein Plaintiffs directed the court's attention to two additional cases in support of their argument that the fiduciary shield doctrine does not bar jurisdiction over Bahl, Walker, and Smythe.  (ECF No. 36, citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683 (6th Cir. 2000); *Ohio v.  Browning-Ferris Indus., Inc.,* Case No. C-86 7387, 1987 U.S. Dist. LEXIS 14653 (N.D. Ohio 1987)).  Defendants argue that the court should strike Plaintiffs'

Supplemental Authority pursuant to Local Rule 7.1 and because it "will not aid the Court in its consideration of the Motion to Dismiss."  (*Id.* at 1.)

The court exercises its inherent discretion to have all relevant case authority before it to assist it in making a fair and just determination.  The court believes that these cases aid it in making such a determination.  Moreover, Defendants had and took advantage of the opportunity to point out to the court in its Motion to Strike Supplemental Authority why it believed that the cited cases are distinguishable from the facts in the instant case.  Accordingly, the court denies Defendants' request that the court grant Defendants leave to file a response to Plaintiffs' Supplemental Authority.

## IV. CONCLUSION

For the reasons stated above, the court: (1) denies Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Insufficiency of Service of Process (ECF No. 8); (2) denies Smythe and Walker's Motion to Dismiss the Complaint for Failure to Serve Process Timely (ECF No. 14); (3) denies Defendants' Motion to Strike Plaintiffs' Supplemental Authority (ECF No. 36); and, (4) denies Defendants Smythe and Walker's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Failure to Serve Process Timely (ECF No. 48).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

April 17, 2008